# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information Associated with Particular Cellular Towers of<br>Sprint Corp., Overland Park, Kansas | )<br>)<br>)   Case No. 2:23-mj-440<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A to the Affidavit in Support of the Search Warrant Application, incorporated herein by reference.

located in the ____Southern____ District of ____Ohio____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to the Affidavit in Support of the Search Warrant Application, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| (1) 18 U.S.C. § 922 (U) . | (1) Theft of Firearms from a Federal Firearms Licensee |
| (2) 18 U.S.C. § 371 | (2) Conspiracy |

The application is based on these facts:

See Affidavit in Support of this Application, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Matthew J. Voytek IV*
*Applicant's signature*

Matthew J. Voytek IV, Special Agent #6591
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 27, 2023

*Kimberly A. Jolson*
Kimberly A. Jolson
United States Magistrate Judge

City and state: Columbus, Ohio

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH PARTICULAR CELLULAR TOWERS | Case No. 2:23-mj-440<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Matthew J. Voytek, a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state the following:

### I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for records and information associated with certain cellular towers ("cell towers") that is in the possession, custody, and/or control of:

   a. AT&T Mobility ("AT&T"), a cellular service provider located at 11760 US Hwy 1, North Palm Beach, Florida 33408;

   b. Cellco Partnership DBA Verizon Wireless ("Verizon"), a cellular service provider located at 180 Washington Valley Road, Bedminster, New Jersey 07921;

   c. T-Mobile USA ("T-Mobile"), a cellular service provider located at 4 Sylvan Way, Parsippany, New Jersey 07054; and

   d. Sprint Corp. ("Sprint"), a cellular service provider located at 6480 Sprint Parkway, Overland Park, Kansas 66251.

2. The information sought to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) that would require AT&T, Verizon, T-Mobile, and Sprint

(collectively the "Target Cellular Providers") to disclose to the Government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, Government-authorized persons will review the said information to locate items described in Section II of Attachment B.

3. I am a Special Agent with the ATF and have been so employed since January 2021. I have attended formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I completed the Criminal Investigator Training Program. I also attended the ATF National Academy in Glynco, Georgia, where I completed Special Agent Basic Training. I have received training in the enforcement of various criminal statutes enacted in the Gun Control Act of 1968 and the National Firearms Act of 1932. I am presently assigned as a Special Agent for the ATF Columbus Field Division, Columbus Group I Field Office. Under 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States.

4. As a Special Agent, I have participated in many investigations involving federal firearms violations. Through these investigations, I have employed various investigative techniques, including conducting electronic surveillance, using confidential informants, and making controlled purchases of firearms. I have also participated in conducting physical surveillance and have executed multiple federal arrest and search warrants. I also know how to analyze information resulting from traditional record searches and reviewing case files. I have specific experience in investigating the use of cell phones. I have seized cellular telephones, reviewed evidence from seized cellular telephones, reviewed cell site data, and consulted with other agents and law enforcement officers who have seized and/or reviewed evidence from cellular telephones. As a result of my training and experience. I am familiar with federal laws

pertaining to the illegal possession of firearms, theft of firearms and conspiracies to commit an offense against the United States, among other crimes.

5. The facts set forth in this affidavit arise from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about subject investigation.

## II. JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## III. RELEVANT CRIMINAL STATUTE

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(u), that is, theft of firearms from a federal firearms licensee, and 18 U.S.C. § 371, that is, conspiracy, (collectively the "**SUBJECT OFFENSES**") have been committed by persons unknown to investigators. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

8. Law enforcement has yet to identify suspects involved in the commission of the offenses. By identifying cellular devices that were present in the vicinity of the crimes at or near the times of the crimes, the requested search warrants would help law enforcement to identify and apprehend suspects involved in the theft of the federal firearms licensee and/or identify potential witnesses.

## IV. PROBABLE CAUSE

9. The incidents described below are described in quasi-reverse chronological order. As revealed in greater detail below, after the burglary of a firearms dealer in Bellefontaine, Ohio on the morning of July 14, 2014, investigators learned of connections to incidents in Columbus, Ohio, which occurred shortly before the burglary.

### A. MAD RIVER FIREARM CO. FFL THEFT

10. Mad River Firearm Co. ("Mad River"), located at 1015 South Detroit Street in Bellefontaine, Ohio, is a Federal Firearms Licensee ("FFL"). It is a physical store which sells a variety of firearms, including handguns and long guns, as well as firearm accessories. Its website is madriverfirearmco.com, and according to its website, it is open until 7 pm every day of the week except Sunday, when it is open until 5 pm. Bellefontaine, Ohio is approximately 50-60 miles northwest of Columbus, Ohio.

11. On July 14, 2023, I received a notification regarding a burglary and/or theft of firearms on July 14, 2023 from Mad River.

12. Based on my review of evidence related to the incident, on July 14, 2023, at approximately 5:30 am, a 2019 Hyundai Elantra with Ohio license plate KBM2598, which was later discovered to be stolen, arrived in the parking lot of Mad River and was occupied by four unknown individuals. A second vehicle arrived at the location and was positioned across the street of Mad River. After it was position across from Mad River, it remained stationary. The stolen Hyundai was then used to ram the front glass door of Mad River. The four unknown individuals exited the vehicle and entered Mad River with backpacks on.

13. Upon entering the store, the four unknown individuals went directly to the firearms glass cases, where they smashed multiple display cases and removed approximately thirty

firearms, which consisted of handguns, rifles, and shotguns. Minutes later, the four unknown individuals exited the store and entered back into the stolen Hyundai Elantra and fled the area. Your affiant believes due to the time of the incident, and the area being a parking lot of a closed business, very few vehicles and people would have been in the area.

14. On the same day, about a half hour later, at approximately 6:00 am, the stolen Hyundai was found abandoned in the parking lot of a Family Urgent care in Bellefontaine, a couple miles away from Mad River. The Hyundai was impounded by the Bellefontaine Police Department. The Hyundai is registered to Rosealynn Bricker, located at 3085 Greenvale Drive, Columbus, Ohio.

15. It was later learned that the Hyundai had been reported stolen on the same day, July 14, 2023, to the Perry Township Police Department, located near Worthington, Ohio. The report indicated that the vehicle had been stolen from 3085 Greenvale Drive Columbus, Ohio on July 14, 2023, in the morning hours. The description of the Hyundai reported stolen to the Perry Township Police Department vehicle matched the vehicle used to ram into Mad River, as depicted in the surveillance footage recovered from Mad River . The owner of the Hyundai reported that the vehicle was stolen from her driveway between the hours of 5:00 am and 8:00 am, and that no one had permission to use the vehicle.

### B.  PERRY TOWNSHIP PD PURSUIT AND ABANDONED VEHICLE

16. On July 14, 2023, at approximately 4:25 am, a Perry Township PD officer was traveling southbound on State Route 315, approaching West Dublin-Granville Road in Worthington, Ohio, when the officer observed two vehicles ahead of him, traveling at a high rate of speed. As the officer exited onto West Dublin-Granville Rd, the officer noticed that they both exited ahead of him. As the officer got closer, the officer observed one of the vehicles to have the

5

rear license plate bent up to obstruct viewing. One of the vehicles, a gray four-door vehicle, appeared to be a Kia or Hyundai style vehicle, occupied by two to three subjects. The lead car, which was a white four door Kia bearing a North Carolina tag, was occupied by a possible white male driver. The officer reported that the white Kia pulled onto a sidewalk, as the gray car drove passed their location. The officer pulled alongside the white Kia and observed a possible white male driver, wearing a white hooded sweatshirt, and a mask covering his mouth. When the male observed the marked patrol cruiser, the Kia immediately fled at a high rate of speed, westbound on West Dublin-Granville Road, passing the gray car in the process. The officer notified dispatch of the circumstances and the North Carolina license plate CDD5397 on the white Kia. Another Perry Twp PD officer was nearby, and the white Kia vehicle passed that officer's location at a very high rate of speed. The gray car signaled a right turn, onto Belbrook, a cul-de-sac. The officer entered onto Belbrook to initiate a traffic stop for the obstructed tag, activating his overhead lights. The vehicle appeared to be operated by a male, also wearing a white, hooded sweatshirt and mask covering his mouth. A second individual was seated in the front passenger position. The car dismissed the officer's efforts to affect a lawful traffic stop, and in a reckless manner, swerved into the grass, and fled from the officer and continued west bound on Dublin-Granville Rd. The car then turned into an apartment complex at 2427 West Dublin-Granville Rd., and then fled east bound on the same road, passing the officer's location. Approximately five minutes later, another Perry Township PD officer indicated that they were with the white Kia, at address 3085 Greenvale Dr., Columbus, Ohio. The car was empty, and running, with the ignition bypassed criminally, and the rear passenger door window shattered to the inside. Your affiant believes due to the time of the incident, and the area being a parking lot of a closed business, very few vehicles and people would have been in the area.

### C.  STOLEN VEHICLE FROM BUCKEYE NISSAN COLLISON CENTER

17. Further investigation revealed that the white Kia Forte bearing North Carolina license CDD5397 was reported stolen on the same day, July 14, 2023, to the Hillard Police Department by Buckeye Nissan Collision Center in Hillard, Ohio. Surveillance footage was obtained from the business parking lot which captured the theft of the Kia Forte from the parking lot at approximately 4:00 am on July 14, 2023. Surveillance footage captured a four-door sedan park near the white Kia Forte in the parking lot. An unknown individual exited the four-door sedan and entered into the Kia Forte. Moments later surveillance footage captured the white Kia Forte being turned on and backing out of a parking space. Boths vehicle then exited the parking lot and entered onto the roadway. Your affiant believes due to the time of the incident, and the area being a parking lot of a closed business, very few vehicles and people would have been in the area.

### V.  NEXUS BETWEEN TARGET PREMISES

18. Based upon the review of the evidence, including the various surveillance videos, police reports recovered from the aforementioned incidents, and the timing in the early morning of the aforementioned incidents, the Affiant believes the suspects from the incidents listed above were involved in the burglary of Mad River. Based on the series of events and timelines, ATF investigators believe that the Kia Forte was stolen at 4:00 am from the Buckeye Nissan Collision Center parking lot in Hilliard. At approximately 4:25 am, Perry Township PD got into a pursuit with the Kia near State Route 315 and Dublin-Granville Road. At approximately 4:30 am, individual(s) from the Kia exited the vehicle near 3085 Greenvale Drive in Columbus, Ohio, and stole a Hyundai sedan from the driveway of 3085 Greenvale Drive.  At approximately 4:30 am,

7

Perry Township PD found the Kia abandoned in front of 3085 Greenvale Street. At approximately 5:30 am, the same individuals used the same stolen Hyundai from 3085 Greenvale to ram into Mad River and steal thirty firearms.

19. I am aware that an overwhelming majority of the United States population owns and uses cellular devices and likely has their device in close proximity to them during the day. I believe that there is a high probability and probable cause to believe that at least one of the suspects in this case had a cellular device on their person or in close proximity to them during the aforementioned incidents. This is not based only on the fact that nearly all Americans possess and use cellular telephones. The facts in this case also indicate that one or more of the individuals in these incidents would have a cell phone. First, there were multiple people involved in the crime – a cellular telephone would be helpful to communicate with each other, especially if they were separated at some point during the events. Second, it appears that multiple vehicles were involved in the crime. During the pursuit on State Route 315, the two vehicles appeared to be associated with each other, and the surveillance video from the burglary reveals that one vehicle parked across the street at the precise time of the burglary. Cellular telephones would have been necessary for the occupants of the vehicles to communicate with each other. I am aware that mobile devices are often utilized to communicate with co-conspirators. I am requesting authorization to recover data which could help identify perpetrators of said crime.

## VI.  CELL TOWER INFORMATION

20. Based upon my prior training and experience, I have learned that Target Cellular Providers are companies that provide cellular communications service to the general public. To provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to specific geographic areas. Each cell tower receives signals

8

from wireless devices, such as cellular phones, in its general vicinity.  By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data.  When sending or receiving communications, a cellular device does not always utilize the cell tower that is located closest to it.

21.  Based on my prior training and experience, I also know that each cellular device is identified by one or more unique identifiers.  For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").  The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

22.  Based on my prior training and experience, I also know that cellular providers, such as the Target Cellular Providers, routinely and in the regular course of their business, maintain historical cell-tower log information, including records identifying wireless communications that were transmitted through a particular cell tower.  For each communication sent or received via the wireless provider's network, these records may include: (1) the telephone call number and unique identifiers of the wireless device that connected to the provider's cellular tower and sent or received the communication ("the locally served wireless device"); (2) the cellular tower(s) on the provider's network, as well as the "sector" (*i.e.*, face of the tower),  to which the locally served wireless device connected when sending or receiving the communication; and (3) the date, time, and duration of the communication.  These records may also include the source and destination telephone numbers

9

associated with the communication (including the number of the telephone that was called or that called the locally served wireless device) and the type of communication (e.g., phone call or SMS text message) that was transmitted.

23.  Based on my training and experience, I know that cellular providers, such as the Target Cellular Providers, have the ability to query their historical records to determine which cellular device(s) connected to a particular cellular tower during a given period of time and to produce the information described above. I also know that cellular providers have the ability to determine which cellular tower(s) provided coverage to a given location at a particular time.

24.  Based on my prior training and experience coupled with the above stated facts, I know that certain information maintained by cellular service providers, such as the Target Cellular Providers, could assist law enforcement authorities in revealing and establishing certain cell towers (and, where applicable, sector) that were used by a given cellular device to engage in a particular communication.  This information, in turn, can be used to establish that a particular target device was in the general vicinity of a particular cell tower at the time a particular communication of interest to subject investigation occurred.  As such, certain records described in Attachment B could assist in identifying the cellular devices that were in the vicinity of where the Kia was stolen from Nissan Buckeye Collison Center, where the Hyundai was stolen from 3085 Greenvale Drive and where Mad River was burglarized and show a commonality in a target device (or target devices) that were present at more than one of the aforementioned incidents. This information, in turn, will assist law enforcement in determining which person(s) were present during the commission of those crimes.

25.  Based on my training and experience, I am aware that information derived from cellular telephone towers has provided and continues to provide helpful leads and has assisted law

enforcement officials in solving similar crimes. The same information has also been useful in the prosecution of those responsible for the crimes. There may be multiple suspects associated with these crimes. As noted above, suspects involved in these types of crimes have been known through experience to coordinate with each other during the commission of the crimes.

26. I know from training and experience that cellular providers maintain records of calls, text messages, and network communication to and from cellular telephones within a tower's coverage area. Such records may be generated even when the user of a cellular telephone is not actively using the device, such as when receiving a phone call or text message. Additionally, depending on device settings and installed applications, cell phones may use a nearby cell tower to upload or download data at unpredictable times. Because the owner of a cell phone cannot necessarily control the timing of such communications, the longer a person remains in the coverage area of a given cell tower, the more likely it is that such records will be generated even if the owner is not actively using the phone.

27. Therefore, there is probable cause to believe that those responsible for the aforementioned crimes possessed cell phones near in time and place to the crimes described above, and that the requested search warrant will provide valuable information leading to the identification of those responsible and provide other useful leads which could further the investigation.

## VII. AUTHORIZATION REQUEST

28. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

29. I further request that the Court direct AT&T Mobility, Cellco Partnership DBA Verizon Wireless, T-Mobile USA, and Sprint Corp. to disclose to the government any information described in Section I of Attachment B that is currently within their possession, care, custody, or

control. Because the requested warrants will be served upon appropriate officials of AT&T Mobility, Cellco Partnership DBA Verizon Wireless, T-Mobile USA, and Sprint Corp., who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

30. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss sensitive facts and circumstances associated with an ongoing criminal investigation that is neither public nor known to the various targets of the subject investigation. Accordingly, there is good cause to seal these documents because premature disclosure may seriously jeopardize the integrity of the subject investigation, thereby giving targets an opportunity to possibly destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

*Matthew J. Voytek IV*
Matthew Voytek, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to before and signed in my
presence and/or by reliable electronic means
this_____day of July 2023

July 27, 2023

Kimberly A. Jolson
United States Magistrate Judge

# ATTACHMENT A

## Property to Be Searched

This Warrant applies to certain records and information associated with communications to and from the cellular antenna towers ("cell towers") servicing the following addresses at the following dates and times that are within the possession, custody, or control of any Provider listed below:

| Address | Date | Time (Eastern) |
|---|---|---|
| 3949 Parkway Ln<br>Hillard, OH 43026<br>(40.031121°, -83.127537°) | July 14, 2023 | 4:05am – 4:15am<br>(Eastern Standard Time) |
| 3085 Greenvale Drive<br>Columbus, OH 43235<br>(40.092790°, -83.072440°) | July 14, 2023 | 4:25am – 4:35pm<br>(Eastern Standard Time) |
| 1015 S Detroit Street<br>Bellefontaine, OH 43311<br>(40.347870°, -83762543°) | July 14, 2023 | 5:24am – 5:30am<br>(Eastern Standard Time) |

And any and all available Specialized Location Records, WITHIN ¼ OF A MILE FROM THE ADDRESS COORDINATES FOR THE CRIME SCENE(S) OUTLINED ABOVE, related to all calls, text and data connection location information, related to all specialized carrier records that may be referred to as NELOS (Network Event Location System), AriesoGEO, RTT (Real Time Tool), PCMD (Per Call Measurement Data), TDOA or Timing Advance Information (also known as TrueCall), Mediation Records, E9-1-1, and/or Historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell-Site and sector of the device in reference to the listed location(s) above in relationship to connecting to the network;

13

The following cellular service providers (each a "Provider") are required to disclose information to the United States pursuant to this warrant:

a. AT&T Mobility, a cellular service provider located at 11760 US Hwy 1, North Palm Beach, Florida 33408;

b. Cellco Partnership DBA Verizon Wireless, a cellular service provider located at 180 Washington Valley Road, Bedminster, New Jersey 07921;

c. T-Mobile USA, a cellular service provider located at 4 Sylvan Way, Parsippany, New Jersey 07054; and

d. Sprint Corp., a cellular service provider located at 6480 Sprint Parkway, Overland Park, Kansas 66251.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be Disclosed by the Provider**

For each cell tower in described in Attachment A, the cellular service providers identified in Attachment A are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made using the cell tower during the corresponding timeframes listed in Attachment A, including records that identify:

   a. the telephone call number and unique identifiers for each wireless device in the vicinity of the cell tower ("the locally served wireless device") that registered with the cell tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

   b. the source and destination telephone numbers associated with each communication (including the number of the locally served wireless device and the number of the telephone that transmitted a communication to, or to which a communication was transmitted by, the locally served wireless device);

   c. the date, time, and duration of each communication;

    d. for each communication, the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device; and the type of the communication transmitted through the tower (such as phone call or text message).

    e. And any available HLR (Home Local Registry) or VLR (Visitor Local Registry) records showing subscriber equipment that were idle but still connected to the provider's network (on but not placing a call, text, or data connection but were in the same area as referenced above connecting to the network);

    f. And any and all available Specialized Location Records related to all calls, text and data connection location information and transactions (registration of network events), related to all specialized carrier records that may be referred to as LOCDBOR (Location Database), Historical Mobile Locate (HML), NELOS (Network Event Location System), RTT (Real Time Tool), PCMD (Per Call Measurement Data), TDOA (Time Difference of Arrival) or Timing Advance Information, Mediation Records, E9-1-1, and/or Historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell-Site and sector of the device in reference to the listed location(s) above in relationship to connecting to the network;

    g. These records should include records about communications that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

    h. FORMAT OF RECORDS: The records sought must be provided in machine-readable form (i.e. computer files), such as Excel spreadsheets. Those files and any

special instructions necessary to read them, for example a Cell Site and Records Key that explains the codes associated with any reports being sent, may be provided either by emailing them to the affiant or providing a link to a portal for downloading.

II.     **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 922(u), that is, theft of firearms from a federal firearms licensee, and 18 U.S.C. § 371, that is, conspiracy, during the time period listed in Attachment A.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.